## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MARC S. SMITH | ) | |
| a/k/a MARC SMITH and | ) | |
| REGINA SMITH,   Husband and Wife | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:19-cv-2431 |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF WELLSVILLE, KANSAS; | ) | |
| and | ) | |
| WILLIAM LYTLE, MAYOR in his official | ) | |
| and individual capacity; | ) | |
| DARIEN KERR, in his official | ) | |
| and individual capacity; | ) | |
| ROBERT WAYNE WHALEN, SR. and | ) | |
| JANICE EDNA WHALEN, Husband and Wife; | ) | |
| DWANE M. DIGHANS and | ) | |
| NELINA M. DIGHANS, Husband and Wife; | ) | |
| SCOTT W. SPARKS and | ) | |
| PEGGY A. SPARKS, Husband and Wife. | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT WITH DEMAND FOR JURY TRIAL

Plaintiffs Marc S. Smith and Regina Smith demand a jury trial on all claims stated in this Complaint, which include claims of the United States Constitution, 42 U.S.C. § 1983 and the law of the State of Kansas.

1.    This case arises from the City of Wellsville, as Administrator of the City of Wellsville water supply system ("Wellsville Water System") and its Mayor, William Lytle, and Darien Kerr, the Certified Operator, its final policy makers, depriving Plaintiffs of equal treatment as a water customer, interfering with and depriving Plaintiffs of property rights and tortiously and

1

deliberately interfering with Plaintiffs' private property and Plaintiffs' right to be treated equally and fairly as a water supply customer.

## JURISDICTION

2.    Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343, which provide for original jurisdiction of this Court in suits based respectively on federal questions and authorized by 42 U.S.C. § 1983, to redress the deprivation under color of state law, statute, ordinance, regulation, custom or usage of any right, privilege, or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States or by any act of Congress providing for equal rights of citizens of all persons within the jurisdiction of the United States.

3.    Plaintiffs further invoke the supplemental jurisdiction of this Court to hear and decide their related claims arising under state law as provided in 28 U.S.C. § 1367.

4.    Plaintiffs' actions for damages are authorized by:

(a) 42 U.S.C. § 1983, which provides for redress for the deprivation under color of any statute, ordinance, regulation, custom or usage of any state or territory of any rights, privileges or immunities secured to all the citizens or persons within the jurisdiction of the United States;

(b) The Fourteenth Amendment of the United States Constitution;

(c) The Kansas Tort Claims Act, K.S.A. 75-6101, et seq.;

(d) The common law of the State of Kansas; and

2

(e) 42 U.S.C. § 1988 which authorizes Plaintiffs' application for attorney's fees and provides that a court may award a reasonable attorneys' fee as part of costs in any action or proceeding to enforce a provision of 42 U.S.C. § 1983.

5.    Venue is proper in the United States District Court for the District of Kansas under 28 U.S.C. § 1391(a)(2), as the events or omissions giving rise to Plaintiffs' claims occurred in Wellsville, Franklin County, Kansas.

## THE PARTIES

6. Plaintiffs Marc S. Smith and Regina Smith, husband and wife, reside in an unincorporated area in Franklin County, Kansas on the outskirts of Wellsville.

7.    The City of Wellsville is a municipal corporation organized and existing under the laws of the State of Kansas.  It is authorized to sue and be sued in its corporate name.  It may be served with process by serving the City Clerk, Tammy Jones, City of Wellsville, 411 Main Street, Wellsville, Kansas 66092.

8.    William Lytle is, and was at all times relevant to this Complaint, the Mayor of the City of Wellsville.  He is the final policy maker for the City of Wellsville regarding its administration, management and operation of the Wellsville Water System.  As a supervisor, he may also be held liable for intentionally or recklessly failing to properly supervise or train his subordinates.  He is sued in his individual and official capacities.

9.    Darien Kerr is the Certified Operator of the Wellsville Water System pursuant to K.S.A. 65-4501-4517.  He, along with the Mayor, is the final policy maker for the Wellsville Water System regarding its administration, management and operation.  As a supervisor, he may

also be held liable for intentionally or recklessly failing to properly supervise or train his subordinates.  He is sued in his individual and official capacities.

10.     Robert Wayne Whalen, Sr. and Janice Edna Whalen, husband and wife, reside in the vicinity of the Smith residence and have tapped into the metered water line in Marc Smith's name to receive water to their residence and property. They may be served at the address set forth in separate documents.

11.     Dwane M. Dighans and Nelina M. Dighans, husband and wife, reside in the vicinity of the Smith residence and have tapped into the metered water line in Marc Smith's name to receive water to their residence and property. They may be served at the address set forth in separate documents.

12.     Scott W. Sparks and Peggy Sparks, husband and wife, reside in the vicinity of the Smith residence and have tapped into the metered water line in Marc Smith's name to receive water to their residence and property.  They may be served at the address set forth in separate documents.

**FACTS**

13.     Pursuant to the Bureau of Public Water Supply section of the State of Kansas Department of Health and Environment the City of Wellsville was permitted to operate the Wellsville Water System.

14.     Darien Kerr is the Certified Operator serving pursuant to K.S.A. 65-4501-4517.

15.     On or about August 12, 1999 Marc Smith received a Water Deposit Receipt from the City of Wellsville for the sum of $65.00 which he paid as a deposit for the water meter serving the residence he just purchased. ("Plaintiffs' Meter").

4

16.     His residence is served by a water service line that extends approximately 1,000 feet from the meter to his property. ("Plaintiffs' Water Line").

17.     Defendants, Robert Wayne Whalen, Sr., his wife Janice Edna Whalen, Dwane M. Dighans, his wife Nelina M. Dighans and Scott W. Parks, his wife Peggy A. Sparks ("Defendant Neighbors") all have residences and property near Plaintiffs.  At various times in the past, Defendant Neighbors have "tapped" into Plaintiffs' Water Line down flow from Plaintiffs' Meter.

18.     No formal or written agreement was ever entered into between Plaintiffs and Defendant Neighbors regarding the payment of water bills or repair, maintenance or replacement of Plaintiffs' Water Line.

19.     In the fall of 2018 Plaintiffs consulted a realtor about selling their house and were advised the law required them to disclose the Defendant Neighbors were receiving their water from Plaintiffs' Meter and that Plaintiffs had no legally enforceable arrangement to require contributions to water bills or to repair, maintain or replace Plaintiffs' Water Line.

20.     Although private meters were installed in each home the Defendant Neighbors never read their meters the same day every month and refused to pay shortfalls or to help pay repair costs of the Plaintiffs' Water Line.

21.     Not surprisingly, disputes arose and animosity developed.

22.     In the winter months of 2018-19 Plaintiffs contacted the City of Wellsville seeking assistance in clearing up the water line situation and were told emphatically by the City Attorney and others that it was a private water line and the City had nothing to do with it.  It was not a

City water line.  Plaintiffs were further advised since it was their water line, Plaintiffs could remove the Defendant Neighbors from the line.

23.    Plaintiffs engaged counsel who also spoke and emailed with the City Attorney on numerous occasions and were also advised it was not considered a City matter and that the homeowners would have to resolve matters themselves.

24.    Relying on the City's stated position, Plaintiffs' counsel obtained the necessary information and prepared a detailed "Declaration of Woodson Water Board" which formalized an agreement between Plaintiffs and Defendant Neighbors to share common ownership of the water line, the cost of water bills, the costs of repair, maintenance or replacement and to bind each property to enforce collection.

25.    On or about December 20, 2018, Plaintiffs' counsel submitted the proposed Declaration to the City Attorney to obtain the City's consent to transfer ownership of the meter and line to the "Woodson Water Board."

26.    On January 9, 2019, the City Council voted not to transfer Plaintiffs' Water Meter to the Woodson Water Board.

27.    On or about January 16, 2019, the City Attorney prepared a revised Consent and sent an email to the City Clerk to have the Mayor sign the consent and return it to Plaintiffs' counsel. It was never signed or returned.

28.    On January 25, 2019, Plaintiffs' counsel sent the entire proposed Declaration to the Mayor and City Council.

29.    On January 30, 2019, Plaintiff Regina Smith, Plaintiff's counsel and Defendant Neighbors attended the Wellsville City Council meeting.

30.    After Plaintiffs' counsel explained the purpose of the proposed Declaration – to formalize Plaintiffs and Defendant Neighbors continued use of a post-meter service line and share the cost of water bills, repair, maintenance, replacement and attorneys fees – the Defendant Neighbors expressed their desire to have their own meters.

31.    After going into executive session with the City Attorney and Darien Kerr, the Mayor and Council returned to regular session and the Mayor announced:

    a)  The Smiths could not remove the Defendant Neighbors from the water line, or cut off their water;

    b)  The Defendant Neighbors did not have to contribute to Smiths' attorney fees for preparation of the Declaration;

    c)  The City would sell the Defendant Neighbors city meters at the City's cost so they could attach them to Plaintiffs' Water Line;

    d)  The City had no obligation to install an up-to-code water main to serve these four water customers;

    e)  The City did not care about the Smiths' problem of trying to sell their house; and

    f)  The Defendant Neighbors were to present a written agreement to the City Attorney for his review, which the Plaintiffs were not invited to be a part of.

32.    The Mayor's statements of the City's position:

    a)  Were completely contrary to the position stated by the City Attorney in November and December 2018 that the line was private, was outside the City limit's and the City had no authority to do anything to the line;

b) Completely undermined Plaintiffs' attempts to get the Defendant Neighbors to agree to the proposed Declaration (to which the neighbors never responded with requested revisions);

c) Were contrary to the advice of the Certified Operator, Darien Kerr, that the line was not installed by the City, the City had no knowledge of its condition and that meters should not be attached to a service line that was not up to code and that doing so likely would damage the line.

33. On or about February 7, 2019, Plaintiffs submitted a Notice of Claim to Tammy Reed (now Jones), City Clerk of Wellsville, pursuant to K.S.A. 12-105b. 120 days has elapsed since service of the Notice of Claim.

34. On or about June 28, 2019, Plaintiffs were contacted by Pat Burton, Building Inspector for the City of Wellsville, acting on behalf of the City and the Mayor and through various discussions and phone calls, Mr. Burton advised the Plaintiffs:

a) They needed to give Plaintiffs' Water Line to the City so meters could be attached for the Defendant Neighbors;

b) That the City would take the line if Plaintiffs did not give it to the City;

c) That the Plaintiffs would have to pay for a new meter to be installed at their property even though they already have a meter; and

d) The Defendant Neighbors were really upset with the Mayor and City for not resolving this dispute.

35. Although the water bills have been paid in full for the last twenty plus years and the account is current, the Defendant Neighbors refuse to:

8

a)  Remove their service lines from Plaintiffs' Water Line;

b)  Pay to have their own lines constructed pursuant to City Ordinance 15-204;

c)  Pay to have their meters installed and pay connection fees pursuant to City Ordinance 15-207;

or, alternatively,

d)  Agree to provide a mechanism to apportion the monthly bills, pay for repair, maintenance or replacement of the Plaintiffs' Water Line and reimburse Plaintiffs for past short falls, repairs and attorney fees;

e)  Meet with Plaintiffs or their counsel to negotiate the terms of an agreement;

f)  Accept transfer of the line to a commonly owned entity;

g)  Cooperate with Plaintiffs' making their home marketable.

36.    Although the City, as a public utility, has received payment for water bills for over 20 years, it refuses to treat Plaintiffs equal to all other customers by refusing to install an up-to-code water main that can serve Plaintiffs' property.

37.    Although City Ordinance 15-225 expressly prohibits cross-connections, the City has failed and refused to enforce this ordinance to the damage and detriment of Plaintiffs and their property.

## **COUNT I**

**Claim against City of Wellsville as administrator of the Wellsville Water System, Mayor William Lytle and Darien Kerr, Certified Operator of the Wellsville Water System under 42 U.S.C. § 1983.**

38.    Plaintiffs incorporate paragraphs 1-37 and further state:

39.     The Fourteenth Amendment protects Americans from unequal treatment and from their property being taken without just compensation.

40.     Plaintiff Marc Smith purchased his residence in July or August 1999 and transferred the water meter to his name on or about August 12, 1999.

41.     Although the Defendant Neighbors had "tapped" into his line at various times, he was recognized by the City as the owner of the line and was responsible for paying the monthly bill and repairing/maintaining the line.

42.     Defendant City consistently considered the line to be Marc Smith's private line as serviced by the meter in his name and has known that the Defendant Neighbors were illegally tapped into his line.  The City has consistently and repeatedly refused to install a water main to serve the Smith property and Defendant Neighbors' property.

43.     Although Plaintiff is paying the same water meter rates as other customers, the City, as administrator, intentionally and maliciously refuses to provide an equivalent water main that complies with current standards.

44.     Said refusal deprives Plaintiffs of equal treatment compared to all other customers and detracts from the value of Plaintiffs' property.

45.     Although the City has denied ownership of the line and has refused to enforce its cross-connection ordinance and state law, since January 30, 2019, the Mayor has stated as well as his agent, Pat Burton, that the City has the right to install City meters on Plaintiffs' Water Line to serve Defendant Neighbors.

46.      Said conduct is irrational, arbitrary, and constitutes vindictive unequal treatment of Plaintiffs as well as a taking of their property without just compensation.

47.     All such conduct has been taken personally by Mayor Lytle and Darien Kerr under color of state law and pursuant to the City's position as a permitted administrator of the Wellsville Water System.

48.     Defendants actions were irrational, arbitrary, intentional, wanton and malicious and taken with reckless disregard for the rights of Plaintiffs.

49.     Defendants knew or should have known their actions violated Plaintiffs' rights to equal treatment and to own their own property free of interference and unlawful takings without just compensation.

50.     Defendants actions also violated Plaintiffs rights to substantive due process under the Fourteenth Amendment.

51.     Defendants actions proximately and directly caused Plaintiffs to suffer damages for diminution in value which are continuing as well as humiliation, embarrassment and emotional distress.

WHEREFORE, Plaintiffs request the following relief against these Defendants:

a)  Damages in the sum of at least $75,000 for reducing the value of their home and property and making it impossible to sell at its full market value;

b)  An order for the City of Wellsville Water Distribution System to install an up-to-code water main so that Plaintiffs and their neighbors may receive equal water service to other customers within the water district;

c)  Defendants be enjoined from taking Plaintiffs' Water Line and/or attaching City water meters to it to serve the Defendant Neighbors without just compensation;

d)  For recovery of its attorneys fees pursuant to 42 U.S.C. § 1988; and

e) For such other relief as the Court deems just, proper and equitable.

## COUNT II

**Claim against the City of Wellsville and against Mayor William Lytle and Darien Kerr, Certified Operator of the Wellsville Water System under 42 U.S.C. § 1983,** *Monell vs. New York City Dep't of Soc. Serv.* **and Fourteenth Amendment.**

52.    Plaintiffs incorporate the allegations contained in paragraphs 1 – 51.

53.    Mayor William Lytle is the final policy maker for the City of Wellsville and he and Darien Kerr are the final policy makers for the Wellsville Water System in the matters delegated or entrusted to them.

54.    Both before and at the time of the events alleged in this Complaint, the City of Wellsville, the Wellsville Water System, Mayor Lytle and Darien Kerr had policies, practices, customs and procedures which operated to deprive Plaintiffs and similarly situated citizens of their constitutional rights under the Fourteenth Amendment.

55.    Acting under color of state law, the individual Defendants violated Plaintiffs' constitutional rights as stated above.  Those violations occurred as a direct result of the failure of the Mayor and Darien Kerr to guide and supervise their subordinates with adequate policies and also by their affirmative final policy decisions.

56.    Mayor Lytle and Darien Kerr and the City of Wellsville are accountable under 42 U.S.C. § 1983 because they made final policy decisions and established policies and practices that were intended to and did encourage, endorse and permit their agents and employees to violate the constitutional rights of Plaintiffs and similarly situated individuals.  At a minimum,

the Mayor, Darien Kerr and the City of the Wellsville were deliberately and recklessly indifferent to such constitutional violations.

57.    The unconstitutional affirmative final policy decisions and policies, practices, customs and procedures of the City of Wellsville, the Mayor and Darien Kerr include but not limited to:

a) The City Council deciding on January 9, 2019, that the name on Marc Smith's water meter could not be changed to the Woodson Water Board;

b) The Mayor announcing on January 30, 2019 after executive session that Plaintiffs could not remove Defendant Neighbors from Plaintiffs' Water Line and that Defendant Neighbors could connect city meters to it;

c) Intentionally or recklessly allowing Defendant Neighbors to cross-connect their water lines to Plaintiffs' in violation of city ordinances;

d) Allowing Defendants Neighbors to pay directly to the City what they claimed were their purported portions of Plaintiffs' monthly water bills;

e) Not requiring Defendant Neighbors to pay their purported shares of water bills to Plaintiffs so that all parties could reconcile and agree on each user's proportionate share of each water bill;

f)  Refusing to disclose to Plaintiffs the amount paid by each Defendant Neighbor on each month's bill resulting in Plaintiffs paying more than their proportionate share to make up any shortfalls;

g) Ignoring the legal responsibilities of Plaintiffs to pay the monthly water bills because the meter was in Marc Smiths' name;

13

h) A policy, practice, custom or procedure of failing to enforce the city ordinances prohibiting cross-connections and requiring each customer to have a meter;

i) Failing to provide equivalent water main lines to Plaintiffs' property;

j) Publicly declaring control of Plaintiffs' Water Line so that Defendant Neighbors could attach meters to it;

k) Publicly humiliating, disparaging and maligning Plaintiffs and encouraging Defendant Neighbors and other employees to do so.

58. In addition to making unconstitutional final policy decisions, policies, practices, customs and procedures, Mayor Lytle, Darien Kerr and the City of Wellsville have also failed to provide adequate training to employees in the following areas:

a) To have a regular program for the detection and elimination of cross-connections as required by K.A.R. 28-15-18 (f) and to implement such a program;

b) To deal exclusively with Plaintiffs and similarly situated water customers whose names meters are issued to as the legally responsible party;

c) Accepting payments from non-metered Defendant Neighbors on Plaintiffs' bill then refusing to disclose to Plaintiffs how much was paid placing Plaintiffs in an untenable position;

d) Allowing employees to engage in conduct contrary to the City's stated position the Plaintiffs' Water Line was a private water line and that all matters relating thereto would have to be worked out between Plaintiffs and Defendant Neighbors;

14

e) Failing to train employees that the exact same amount paid by a Defendant Neighbor each month could not possibly be an accurate accounting of a propionate share of each month's water bill;

f) Following the advise of the City Attorney and Certified Operator.

59. Mayor Lytle, Darien Kerr and City of Wellsville established, maintained and are responsible for the inadequate training and the inadequate policies, practices, customs and procedures as described above.

60. The inadequate policies, practices, customs and procedures, and the inadequate training were implemented intentionally and/or recklessly to deprive citizens, including Plaintiffs, of their constitutional rights and were direct, and proximate cause of the constitutional violations and injuries set forth in this Complaint.

61. The constitutional violations committed by Defendants arose from circumstances that constitute a usual and recurring situation.

62. The City, Mayor Lytle and Darien Kerr inadequate training practices and their failure to adequately supervise their employees led directly to the violation of Plaintiffs' constitutional rights under the Fourteenth Amendment.

63. The City of Wellsville, the Mayor's and Darien Kerr's inadequate policies, practices, customs and procedures as listed above led directly to the violation of Plaintiffs' consitutional rights under the Fourteenth Amendment.

64. The City, Mayor Lytle's and Darien Kerr's failures to adequately guide, train and supervise their employees proximately and directly caused Plaintiffs to suffer grievous and continuing injuries, including humiliation, embarrassment and emotional distress.

15

## COUNT III

**Claims against the City of Wellsville as administrator of the Wellsville Water System, Mayor William Lytle and Darien Kerr, Certified Operator of the Wellsville Water System under the Kansas Consumer Protection Act ("KCPA") K.S.A. 50-623 et seq.**

65.     Plaintiffs incorporate the allegations contained in paragraphs 1 – 64.

66.     Defendant City of Wellsville, through its City Attorney and others prior to January 30, 2019, took the position the Plaintiffs' Water Line was not a City water line, was privately owned and the City had no jurisdiction over it and it was up to the Plaintiffs and Defendant Neighbors to resolve matters.

67.     Relying on the City's position, Plaintiffs engaged legal counsel and incurred considerable expense preparing the "Declaration of Woodson Water Board," which placed all four users of Plaintiffs' Water Line on equal footing and obligated them to pay their pro rata share of monthly bills and repair/maintenance and replacement costs.

68.     Although the City Attorney directed the Mayor to consent to the change of name on the Plaintiffs' water meter, on January 9 and again on the 30, 2019, the City Council refused to allow the transfer.

69.     On January 30, 2019, the Mayor announced the City's position that it would sell City water meters to the Defendant Neighbors so that they could attach them to Plaintiffs' Water Line and that Plaintiffs could not remove Defendant Neighbors from the water line, cutoff their service or consider their line a private line.

70.     Plaintiffs incurred considerable expense for legal counsel to prepare the Declaration.

16

71.   The City is a supplier pursuant to KCPA.

72.   The City, the Mayor and Darien Kerr engaged in misleading and deceptive or unconscionable acts or practices by suddenly, unilaterally and without cause or justification declaring Plaintiffs' Water Line under their control and publicly declaring that the Defendant Neighbors were authorized to attach new City meters to it.

73.   Plaintiffs reasonably relied on the City attorney's verbal and email statements that the City had no authority over Plaintiffs' private water line and that it would not get involved in attempting to resolve the dispute.

74.   These Defendants, suddenly, unilaterally, and contrary to the advice of the City Attorney changed the City's position to Plaintiffs' detriment and completely undermined the efforts they had made to resolve matters with Defendant Neighbors after incurring considerable legal expense.

75.   Defendants' actions proximately and directly caused Plaintiffs to incur damages for diminution in value which are continuing including humiliation, embarrassment and emotional distress and the City's actions have made it impossible for Plaintiffs to reasonably resolve matters with Defendant Neighbors.

WHEREFORE, Plaintiffs request the following relief:

a)   Damages in the sum of at least $75,000 for reducing the value of their home and making it impossible for them to obtain fair market value for it;

b)   Compensation for the legal fees that have been incurred after relying upon the City's position that the water line was private and was not a City matter in a sum yet to be determined;

c)  An order prohibiting the City from selling meters at cost to Defendant Neighbors for the purpose of attaching them to Plaintiffs' Water Line;

d)  For an order requiring Defendant City to install a water main up to current standards to serve Plaintiffs' property;

e)  For civil penalties authorized by the KCPA; and

f)  For such other relief as the Court deems just, proper and equitable.

## COUNT IV

**Claims against the City of Wellsville as administrator of the Wellsville Water System, Mayor William Lytle and Darien Kerr, Certified Operator of the Wellsville Water System for tortious interference under Kansas law.**

76.    Plaintiffs incorporate the allegations contained in paragraphs 1 – 75.

77.    Defendant City of Wellsville, through its City Attorney and others prior to January 30, 2019, took the position the Plaintiffs' Water Line was not a City water line, was privately owned and the City had no jurisdiction over it and it was up to the Plaintiffs and Defendant Neighbors to resolve matters.

78.    Relying on the City's position, Plaintiffs engaged legal counsel and incurred considerable expense preparing the "Declaration of Woodson Water Board," that placed all four users of Plaintiffs' Water Line on equal footing and obligated them to pay their pro rata share of monthly bills and repair/maintenance and replacement costs.

18

79. Plaintiffs reasonably relied on the City attorneys verbal and email statements that the City had no authority over Plaintiffs' private water line and that it would not get involved in attempting to resolve the dispute.

80.    These Defendants, suddenly, unilaterally, and contrary to the advice of the City Attorney changed the City's position to Plaintiffs detriment and completely undermined the efforts they had made to resolve matters with Defendant Neighbors after incurring considerable legal expense.

81.    Placing the Plaintiffs' Water Line in the name of the Woodson Water Board and entering into a Declaration of Woodson Water Board with Defendants Neighbors, which would provide a mechanism in which all four users of Plaintiffs' Water Line would be members of the water board and would be obligated to pay their pro rata share of monthly bills and repair/maintenance and replacement costs provided Plaintiffs with a probable expectancy of future economic benefits which would reduce their individual liability in relation to the Plaintiffs' Water Line and increase Plaintiffs' market value for their home.

82.    The City of Wellsville as administrator of the Wellsville Water System, Mayor William Lytle and Darien Kerr, Certified Operator of the Wellsville Water System all had knowledge of the relationship between the four users of Plaintiff's Water Line, had knowledge of the proposed Declaration of Woodson Water Board and the purpose of transferring ownership of the Plaintiffs' Water Meter and Plaintiffs' Water Line to the Woodson Water Board and had knowledge of the Plaintiffs' probable expectancy of future economic benefits pursuant to the Declaration of Woodson Water Board.

83.    Except for the conduct of these Defendants, the Plaintiffs were reasonably certain to realize the expected future economic benefits of transferring ownership of Plaintiffs' Water Line and forming the Woodson Water Board.

84.    These Defendants, intentionally and without any reasonable justification or excuse, tortiously interfered with Plaintiffs' expected future economic benefit.

85.    Defendants' actions proximately and directly caused Plaintiffs to incur damages which are continuing including humiliation, embarrassment and emotional distress and the City's actions have made it impossible for Plaintiffs to reasonably resolve matters with Defendant Neighbors.

WHEREFORE, Plaintiffs request the following relief:

a)  Damages in the sum of at least $75,000 for interfering with Plaintiff's prospective business relationship, reducing the value of their home and making it impossible for them to obtain fair market value for it;

b)  Compensation for the legal fees that have been incurred after relying upon the City's position that the water line was private and was not a City matter in a sum yet to be determined;

c)  An order prohibiting the City from selling meters at cost to Defendant Neighbors for the purpose of attaching them to Plaintiffs' Water Line; and

d)  For such other relief as the Court deems just, proper and equitable.

## COUNT V

**Claims against the City of Wellsville as administrator of the Wellsville Water System, Mayor William Lytle and Darien Kerr, Certified Operator of the Wellsville Water System for inverse condemnation under Kansas law.**

86. Plaintiffs incorporate the allegations contained in paragraphs 1 – 85.

87. Plaintiffs have an interest in Plaintiffs' Water Meter and Plaintiffs' Water Line.

88. By declaring that Plaintiffs were prohibited from cutting off Defendants Neighbors from Plaintiffs' Water Line and stating that the City would sell water meters to Defendants Neighbors and place those water meters on Plaintiffs' line, these Defendants have taken Plaintiffs' Water Meter and Plaintiffs' Water Line for public use. Further, the City, through Pat Burton and others have declared that Plaintiffs' Water Line and Water Meter will be taken for public use.

89. These Defendants have not initiated any formal condemnation proceeding concerning Plaintiffs' property.

90. Despite this public taking, Plaintiffs have not received just compensation for the condemnation.

WHEREFORE, Plaintiffs request the following relief:

a) Damages in the sum of at least $75,000 for the interference, damage and taking of their private property without just compensation;

b) For an order requiring Defendant City to install a water main up to current standards to serve Plaintiffs' property; and

c) For such other relief as the Court deems just and equitable.

## COUNT VI

**Claims against Robert Wayne Whalen, Sr., his wife Janice Edna Whalen, Dwane M. Dighans, his wife Nelina M. Dighans and Scott W. Parks, his wife Peggy A. Sparks ("Defendant Neighbors") for declaratory judgment of ownership of the Plaintiffs' Water Line and enjoinment under Kansas Law.**

91.    Plaintiffs incorporate the allegations contained in paragraphs 1 – 90.

92.    This Court has the power to declare the rights, status and other legal relations of the parties.

93.    Plaintiffs are the owners of Plaintiffs' Water Line and Plaintiffs' Water Meter.

94.    Defendant Neighbors have illegally tapped into the Plaintiffs' Water Line, and have no right, title or interest in the line.

95.    Plaintiffs have demanded Defendant Neighbors detach their private water lines from Plaintiffs' Water Line.  However, after Mayor Lytle declared that Plaintiffs were prohibited from detaching Defendant Neighbors' private lines from Plaintiffs' Water Line, Defendant Neighbors have refused to refrain from using Plaintiffs' Water Line and have refused to detach their private water lines.

96.    There is a justiciable controversy between Plaintiffs and Defendant Neighbors that presents a real, substantial, presently existing controversy admitting of specific relief that is ripe for judicial determination.

97.    Plaintiffs have a legally-protectable interest in their water line, and such interest will be affected by the Court's decision herein.

98.    Plaintiffs lack an adequate remedy at law.

22

WHEREFORE, Plaintiff requests the following relief:

a) a declaration concerning the parties' rights, status and/or legal relations with respect to Plaintiffs' Water Line;

b) a declaration that Plaintiffs are the sole owners of the Plaintiffs' Water Line;

c) a declaration that Defendant Neighbors have no interest, title or right to Plaintiffs' Water Line;

d) a declaration that Defendant Neighbors are prohibited from using Plaintiffs' Water Line and must detach their private lines from Plaintiffs' Water Line;

e) a judgment for damages jointly and severally, or individually as the case may be, for short falls in monthly bills and costs of repairs paid by Plaintiffs;

f) the cost for prosecution of this action; and

g) For such other relief as the Court deems just, proper and equitable.

### Jury Trial Demand

Plaintiffs demand a jury trial, pursuant to the Seventh Amendment to the Constitution of the United States, as to all claims for damages.

FERREE, BUNN & RIDGWAY, CHTD.

*/s/ Lawrence L. Ferree, III*

Lawrence L. Ferree, III       KS #08519
Alex S. Gilmore                  KS #27334
9393 W. 110th Street, Suite 200
Overland Park, KS 66210
(P) 913-381-8180 / (F) 913-381-8836
lferree@fbr2law.com
agilmore@fbr2law.com
ATTORNEYS FOR PLAINTIFFS

*I:\Smith, Marc\Petition72519*