# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARC S. SMITH, *et al.*,            )
                                    )
        Plaintiffs,            )
                                    )
v.                                  )   Case No. 19-2431-JWB-KGG
                                    )
CITY OF WELLSVILLE, KANSAS, )
*et al.*,                           )
                                    )
        Defendants.            )
_____ )

## **MEMORANDUM & ORDER ON MOTION TO AMEND**

Now before the Court is Plaintiffs' Motion for Realignment of Parties (Doc. 59), which seeks an Order realigning Defendants Robert Whalen, Janice Whalen, Dwane Dighans, Nelina Dighans, Scott Sparks and Peggy Sparks as Plaintiffs with interests adverse to Defendant City of Wellsville. Having reviewed the submissions of the parties, Plaintiffs' motion is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

## **FACTUAL & PROCEDURAL BACKGROUND**

Plaintiffs filed their initial Complaint on July 25, 2019, stating claims against the City Defendants (Defendant City of Wellsville, William Lytle, and

1

Darien Kerr) for violations of Plaintiffs' constitutional rights under 42 U.S.C. § 1983.  Plaintiffs also asserted a *Monell* claim against these Defendants as well as supplemental state law claims for violations of the Kansas Consumer Protection Act, tortious interference under Kansas law, and inverse condemnation under Kansas law.  In addition, Plaintiffs brought a declaratory judgment action against the remaining individual Defendants Robert Whalen, Janice Whalen, Dwane Dighans, Nelina Dighans, Scott Sparks and Peggy Sparks (the hereinafter "Defendant Neighbors") relating to ownership of the water pipeline at issue.

The City Defendants filed their Motion to Dismiss Plaintiffs' claims on September 23, 2019, wherein they argued that Plaintiffs' Complaint should be dismissed based on the City Defendants' qualified immunity.  (See Doc. 12.)  The City Defendants contemporaneously filed their Motion to Stay Discovery (Doc. 14), which this Court granted on October 21, 2019, staying discovery until the District Court ruled on the dispositive motion.  (Doc. 23.)

Plaintiffs filed their Motion to Amend Complaint (Doc. 30) on December 12, 2019, alleging "newly discovered" facts regarding an alleged conflict between Defendants City and Scott Sparks.  The next day, December 13, 2019, the District Court entered a text Order denying without prejudice the City Defendants' Motion to Dismiss pending a ruling on Plaintiffs' Motion to Amend.  (*See* 12/13/19 text Order.)  The Order stated that this was done "[t]o promote efficiency and to avoid

having the motion to dismiss intertwined with the motion to amend to a degree that complicates the procedural posture of the case unnecessarily … ." (*Id.*) The District Court continued that "[a]fter the motion to amend is resolved, defendants may file a new motion to dismiss with respect to the operative complaint, if appropriate." (*Id.*)

The Motion to Amend was granted by the undersigned Magistrate Judge, by text entry, on February 4, 2020. (*See* Doc. 39, text entry.) The Amended Complaint was filed on February 11, 2020, and asserts claims against the City Defendants for violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983, a ***Monell*** claim, supplemental state law claims for violations of the Kansas Consumer Protection Act, state law tortious interference, and state law inverse condemnation.[1] Plaintiffs also renewed their declaratory judgment claim against the Defendant Neighbors, requesting an order establishing Plaintiffs as the owner of the waterline. (Doc. 42.)

---

[1] Former Plaintiff Marc S. Smith died on November 23, 2019. Upon his death, his wife, Plaintiff Regina Smith, became "the owner of their residence and surrounding land and succeeded to all his interest in the Water Line, meter and account with the City." (Doc. 58, at 1.) An estate was opened for Marc S. Smith in Franklin County, Kansas, in July 2020. Plaintiff Regina Smith (hereinafter "Mrs. Smith") was appointed Administrator and Special Administrator of that estate in August 2020. The Court recently allowed Mrs. Smith to substitute the Estate of Marc S. Smith in place of Marc S. Smith in this lawsuit. (Doc. 71.)

Following the filing of Plaintiffs' Amended Complaint, the City Defendants filed a renewed motion to dismiss on February 19, 2020.  (Doc. 43.)  Therein, the City Defendants contend that Plaintiffs have failed "to state a plausible claim upon which relief may be granted under any theory," that the individual City Defendants are entitled to qualified immunity, that there is "no cause of action available under the Fifth or Fourteenth Amendment under the facts presented," and that the City Defendants "are immune from liability pursuant to K.S.A. § 75-6104."  (*Id.*)  That dispositive motion remains pending with the District Court.

In the current motion, Plaintiffs ask the Court to realign the parties because the Defendant Neighbors "are parties with interests adverse to the City of Wellsville."  (Doc. 59 at 1.)  Plaintiffs contend that

> [a]lthough the Defendant Neighbors have been named Defendants in this case, it is evident from the First Amended Complaint (and Plaintiff's proposed Second Amended Complaint filed contemporaneously with this Motion) that the Defendant Neighbors' interests are adverse to [the City Defendants] concerning the discriminatory treatment by the City Defendants against Plaintiff and Defendant Neighbors and City Defendants' duty to install an up-to-code water main to service these customers' residences.  While Defendant Neighbors have not asserted crossclaims against City Defendants in this action, Plaintiff's First Amended Complaint demonstrates the adverse nature between City Defendants and the remaining parties.

(*Id.*, at 1-2.)  Plaintiffs thus seek an Order "realign[ing] Defendant Neighbors as Plaintiffs on the issues of the City Defendants' discriminatory conduct and

4

obligation to install and up-to-code water main to service these four customers."

(*Id*., at 2.)

In their brief in opposition to the motion, the City Defendants summarize the following facts as relevant:

> [T]he waterline serving the Smiths and Defendant Neighbors properties is a private waterline. All the City does is sell water and issue bills for payment. The genesis of this is, apparently, a falling out between the Smiths and the Defendant Neighbors about the timely payment of water bills and, allegedly, the costs of repair, maintenance, or replacement of service lines to each residence. As a part of the proposed resolution of this dispute, the Smiths caused their attorney to send to the City attorney a proposed Declaration seeking the City's consent to transfer ownership of the meter bill – the name on the bill – from Marc Smith to the "Woodson Waterboard," which was an entity that the Smiths sought to create. This version of the Declaration did not include a provision for payment of the Smiths attorney's fees by the Defendant Neighbors [Doc. 13-1].
> On January 9, 2019, the City council voted to not transfer the Smiths' meter bill to the "Woodson Waterboard." [Doc. 1, ¶ 26, Doc. 13-2]. The City attorney then prepared a revised Consent to transfer the name on the meter and sent it by email to the City Clerk requesting the Mayor sign the Consent and return it to Smiths' counsel. It was never signed or returned [Doc. 1, ¶ 27]. Thereafter, on January 25, 2019, Smiths' counsel sent a new Declaration to the Mayor and City Council [Doc. 1, ¶ 28, Doc. 13-3]. Unlike the earlier Declaration, this one required that the Defendant Neighbors pay a portion of the Smiths attorney fees.
> On January 30, 2019, the City Council considered the Declaration and heard statements from Smiths' counsel and the Defendant Neighbors. What was abundantly clear, is that the Defendant Neighbors

5

>opposed the Declaration presumably because the new requirement of payment of attorney's fees.
>   Following an executive session, the Mayor announced that it was the City's intention to do nothing with regard to the Declaration because it was not the City's dispute and offered to sell the Defendant Neighbors individual water meters that would enable the City to read the usage remotely.

(Doc. 67, at 2-3.) The City Defendants point out that Defendant Neighbors have "neither filed suit against the Wellsville Defendants nor made a Counterclaim." (*Id*., at 4.)

Defendant Neighbors filed a succinct response to Plaintiffs' motion, positing that the case is "primarily related to the Plaintiffs' claim against [the] City Defendants" and that they "are not part of this action voluntarily, yet they are compelled to remain involved due to Plaintiffs' claim for declaratory judgment against them." (Doc. 68, at 1.) That stated, the Defendant Neighbors agree with Plaintiffs that "they appear to be in similar standing with the Plaintiffs with regard to any decision of this Court that may address the City's obligation to maintain or replace the water line," but are unwilling to "undertake or risk the potential expenses, burdens or liabilities that may accompany the assertion of claims against the City Defendants." (*Id*., at 2.)

The Defendant Neighbors take no position as to how the Court should determine the proper alignment of the parties. (Id.) Even so, the Defendant Neighbors deny Plaintiffs' declaratory judgment claim as to the pipeline at issue.

(*Id.*)  The Defendant Neighbors contend they have "cooperatively paid the City of Wellsville for water usage and maintained the waterline in the same manner as have the Plaintiffs."  (*Id.*)

## ANALYSIS

The parties agree that federal courts are enabled and duty bound to realign the parties to a lawsuit according to their true interests.  *See generally* **City of Indianapolis v. Chase Nat'l Banks**, 314 U.S. 63, 69 (1941); *see also* **City of Vestavia Hills v. Gen. Fid. Ins. Co.**, 676 F.3d 1310 (11th Cir. 2012).  In determining whether realignment is appropriate, Courts in other Circuits have applied the primary purpose test and the substantial controversy test.

Using the primary purpose test, "[i]f the interests of a party named as a defendant coincide with those of the plaintiff in relation to the [primary] purpose of the lawsuit, the named defendant must be realigned as a plaintiff … ."  **United States Fid. and Guar. Co. v. Thomas Solvent Co.**, 955 F.2d 1085, 1089 (6th Cir. 1992) (citation omitted).  With the substantial controversy test, "courts require the existence of an actual, substantial controversy, or a collision of interests [if they are to deny realignment] but the conflict may in some cases concern an issue other than the so-called primary issue in dispute."  **Maryland Cas. Co. v. W.R. Grace & Co.**, 23 F.3d 617, 622 (2nd Cir. 1993) (citing **City of Indianapolis**, 314 U.S. at 69).

7

The Tenth Circuit does not appear to have addressed which standard applies in situations where subject matter jurisdiction is predicated on the existence of a federal question.  "Although realignment questions typically arise in the diversity of citizenship context, the need to realign a party whose interests are not adverse to those of his opponent(s) exists regardless of the basis for federal jurisdiction." *Lake Irwin Coal v. Smith*, No. 19-1056-CMA-GPG, 2020 U.S. Dist. LEXIS 159016, at *11 (D. Colo. Sep. 1, 2020).  In situations involving diversity jurisdiction, this Circuit has, however, adopted the substantial controversy test.  *See* *Price v. Wolford*, 608 F.3d 698, 705 (10th Cir. 2010).  This Court will, therefore, apply the substantial controversy test to the present situation and notes that the parties agree. (Doc. 59, at 3; Doc. 67 at 5.)

Plaintiffs argue that realigning the Defendant Neighbors as Plaintiffs is appropriate as to the claims against the City Defendants.  (Doc. 59, at 4.)  According to Plaintiffs, their claims against City Defendants are "not adverse whatsoever to Defendant Neighbors."  (*Id*.)  Rather, according to Plaintiffs,

> [t]he primary purpose of the lawsuit is for City Defendants to treat these water customers equally in respect to all other water customers and be required to install an up-to-code water main to serve these customers' residences.  Despite the structure of the First Amended Complaint, Plaintiff and Defendant Neighbors share the same fundamental goal – to be treated equally by City Defendants and get an up-to-code water main installed so that their residences are provided with

> quality water from the supplier through an up-to-code water main and separate meters just as all other customers.

(*Id.*)  Plaintiffs continue that

> [t]he City's refusal to install a comparable water main uniformly condemns Plaintiff and Defendant Neighbors to indefinite, inferior and discriminatory status as water customers resulting in diminution of their respective property values.  The City's refusal to change the name while encouraging Defendant Neighbors not to accept joint responsibility creates a conundrum only the Court can resolve.

(*Id.*, at 5.)

The City Defendants respond that their interests are not adverse to the Defendant Neighbors and argue that Plaintiffs are attempting to use this procedure for an improper purpose.  (Doc. 67, at 5, 6.)  According to the City Defendants, Plaintiffs are using "the doctrine as a trapdoor to fashion previously unasserted claims."  (*Id.*, at 6.)  The City Defendants contend that

> [Plaintiff] Smith's core complaint is that she suffered a due process violation under the Fifth and Fourteenth Amendments.  Compare [Doc. 1], with [Doc. 41], and [Doc. 58-1].  The substance of the claims outlined in the proposed Second Amended Complaint focus on whether the City's alleged refusal to allow a change in the name on Smith's water account and the City's offering to sell meters to the Defendant Neighbors violated Smith's rights. [Doc. 58-1].
> However, Smith pivots her argument in the Motion to Realign.  Compare [Doc. 58-1] with [Doc. 59].  Smith now suggests that she and the Defendant Neighbors are the subject of Fifth and Fourteenth Amendment

> violations stemming from the City's offer to sell remote water meters. [Doc. 58-1]. Smith's Motion is a fourth attempt to assert colorable claims, thwart the pending Motion to Dismiss, and refashion the claims asserted in the Second Amended Complaint while sidestepping necessary procedural hurdles. Compare [Doc. 1], with [Doc. 41], and [Doc. 58-1]. Because Smith's Motion serves an ulterior motive beyond the doctrine of realignment's purpose, it should be denied.

(*Id*.)

This Circuit has held that "courts will scrutinize the interests of the parties in order to determine if their positions as plaintiffs and defendants conform to their real interests." **Farmers Alliance Mut. Ins. Co. v. Jones**, 570 F.2d 1384, 1387 (10th Cir. 1978) (reaching this conclusion on a case based on diversity jurisdiction) (citing 3A Moore's Federal Practice, 2nd ed., § 1093(1), at 2152). "When appropriate, parties will be realigned; however, this is to be done only after real rather than apparent interests have been ascertained." *Id*.

In their claims against the City Defendants, Plaintiffs' Second Amended Complaint contends that Defendant Neighbors "reside in the vicinity of the Smith residence and have tapped into the metered water line in [Plaintiffs'] name to receive water to their residence and property." (Doc. 42, at 3-4.) Plaintiffs also contend " the Defendant Neighbors never read their meters the same day every month and refused to pay shortfalls or to help pay repair costs of the Plaintiffs' Water Line." (*Id*., at 5.)

In addition, Plaintiffs brought a declaratory judgment claim against the Defendant Neighbors to determine ownership of the waterline.  (*Id*., at 23-24.) Therein, Plaintiffs allege that "Defendant Neighbors have illegally tapped into the Plaintiffs' Water Line, and have no right, title or interest in the line."  (*Id*., at 24.) The claim continues to allege that "[t]here is a justiciable controversy between Plaintiffs and Defendant Neighbors that presents a real, substantial, presently existing controversy admitting of specific relief that is ripe for judicial determination."  (*Id*.)

Given this cause of action and the related allegations against the Defendant Neighbors, the Court finds that there is, at least in part, an actual, substantial controversy, or a collision of interests, between Plaintiffs and the Defendant Neighbors.  In response to Plaintiffs' motion, the Defendant Neighbors have specifically stated that they "deny the Plaintiffs' claim that the Plaintiffs are entitled to a declaration that they own the pipeline at issue."  (Doc. 68, at 2.)

That stated, the Defendant Neighbors also indicate that they "agree with Plaintiffs that with regard to the sharing and use of the water line, they do appear to be in similar standing with the Plaintiffs with regard to any decision of this Court that may address the City's obligation to maintain or replace the waterline."  (*Id*.) They are merely "unwilling to undertake or risk the potential expenses,

11

burdens or liabilities that may accompany the assertion of claims against the City Defendants." (*Id.*) In this regard, the interests of Plaintiffs and the Defendant Neighbors are clearly aligned.

As indicated above, the cases in this Circuit dealing with realignment have addressed the issue in the context of diversity jurisdiction. In such situations, it is of particular importance for the Court to align the parties appropriately because such alignment will often determine whether diversity exists or whether the case should be remanded to state court. The case at bar, however, is based on federal question jurisdiction. Thus, the alignment of the parties will not impact whether the case remains in federal court.

In this instance, the Court finds that the Defendant Neighbors should be classified as Plaintiffs in regard to the claims that "address the City's obligation to maintain or replace the water line." (Doc. 68, at 2.) As to Count VI of the Amended Complaint, the declaratory judgment claim Plaintiffs have brought against the Neighbors, the Court finds that this shall be considered a crossclaim by Plaintiffs against the Neighbors. The Neighbors will, therefore, be considered crossclaim Defendants for Count VI. Plaintiffs are instructed to revise their Complaint accordingly.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Realignment of Parties (Doc. 59) is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

Dated this 6th day of November, 2020, at Wichita, Kansas.

                        S/ KENNETH G. GALE
                        HON. KENNETH G. GALE
                        U.S. MAGISTRATE JUDGE