IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARC S. SMITH and
REGINA SMITH,

        Plaintiffs,

v.                                                                       Case No. 19-2431-JWB

CITY OF WELLSVILLE, KANSAS, et al.

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' Motion to Dismiss (Doc. 43). The motion has been fully briefed and is ripe for decision. (Docs. 44, 50, 55.) For the reasons set forth herein, Defendants' Motion to Dismiss is GRANTED.

**I.  Background and Facts**

The following facts are taken from Plaintiffs' amended complaint.[1] (Doc. 42.) Defendants have also submitted some evidence that they claim is referenced in and central to the complaint. *See Alcarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (noting that a court may consider documents referred to in the complaint if they are central to plaintiff's claims and undisputed). The parties agree that the court may consider four of the six exhibits submitted. Plaintiffs argue that the court should not consider the documents from the city council meetings of January 9 and January 30, 2019. In reply, the city defendants conceded this point, so the court will

---

[1] Magistrate Judge Gale has recently entered two orders (Docs. 71 and 72) affecting this case. However, since neither affects the outcome in this order, the court will refer to the parties as they were aligned in the amended complaint (Doc. 42).

1

not consider those two attachments. With these standards in mind, the court now turns to the facts of the case—viewed in the light most favorable to Plaintiffs.

Plaintiffs purchased their residence in 1999 and paid the City of Wellsville a deposit for a water meter serving the property.[2] Plaintiffs own the private water service line, which extends about 1,000 feet from the meter to the property. The Whalens, Dighans, and Sparks ("Neighbor Defendants") own property near Plaintiffs. At various times, they (or their predecessors) have tapped into Plaintiffs' water line. Plaintiffs and the Neighbor Defendants do not have a written agreement about the payment of bills or other costs associated with the water line. Disputes have arisen over payments and measurement of the water used.

In 2018, Plaintiffs talked to a realtor about selling their house. The realtor advised them that they would need to disclose the water-line situation. During the winter of 2018 to 2019, plaintiffs asked the City of Wellsville for help with the situation, but the city attorney and others told them that it was not a city matter because it was a private water line. Plaintiffs hired counsel, who also contacted the city attorney and was told the homeowners would have to resolve the issue themselves.

Based on these representations, Plaintiffs' counsel prepared a "Declaration of Woodson Water Board," which would serve as an agreement to share ownership and costs of the water line. Counsel submitted the proposed declaration to the city attorney to obtain consent to transfer ownership of the meter and line to the Woodson Water Board.

A few weeks later, on January 9, 2019, the city council voted not to transfer Plaintiffs' water meter to the Woodson Water Board. On January 30, Plaintiff Regina Smith, Plaintiffs' counsel, and the Neighbor Defendants attended the Wellsville City Council meeting. The mayor,

---

[2] Plaintiffs actually allege that the water line and meter are in Marc Smith's name only. For ease of reference throughout this opinion, however, the court will continue to use the plural term "plaintiffs."

council, city attorney, and the Certified Operator of the Wellsville Water System, Darien Kerr, went into executive session. When they returned, the mayor announced:

> a) The Smiths could not remove the Defendant Neighbors from the water line, or cut off their water;
> b) The Defendant Neighbors did not have to contribute to Smiths' attorney fees for preparation of the Declaration;
> c) The City would sell the Defendant Neighbors city meters at the City's cost so they could attach them to Plaintiffs' Water Line;
> d) The City had no obligation to install an up-to-code water main to serve these four water customers;
> e) The City did not care about the Smiths' problem of trying to sell their house; and
> f) The Defendant Neighbors were to present a written agreement to the City Attorney for his review, which the Plaintiffs were not invited to be a part of.

(Doc. 42 at 7.) On June 28, 2019, the building inspector for the City of Wellsville—Pat Burton—contacted Plaintiffs on behalf of the city and the mayor, and advised Plaintiffs:

> a) They needed to give Plaintiffs' Water Line to the City so meters could be attached for the Defendant Neighbors;
> b) That the City would take the line if Plaintiffs did not give it to the City;
> c) That the Plaintiffs would have to pay for a new meter to be installed at their property even though they already have a meter; and
> d) The Defendant Neighbors were really upset with the Mayor and City for not resolving this dispute.

(*Id.* at 8.)

The city has refused to install a water main that complies with current standards to serve Plaintiffs' property and the Neighbor Defendants' properties. Unhappy with this result, Plaintiffs filed suit, claiming that the City of Wellsville, Mayor Lytle, and Kerr (the "City Defendants"), violated their constitutional rights. Specifically, Plaintiffs claim that these Defendants violated their Fourteenth Amendment rights to equal protection, to be free from unconstitutional takings, and to substantive due process. They also claim that both the City Defendants and Neighbor Defendants violated state law in several ways.

3

## II. Standard of Review

The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.* "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

## III. Discussion

### A. Constitutional Violations

#### 1. Qualified Immunity

The doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is only applicable, however, if the official's conduct did not violate clearly established constitutional or statutory rights that would have been known by a reasonable government official. *See Harlow*, 457 U.S. at 818; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005). "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct."

4

*Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (citing *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011)). The court may take up either inquiry first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). When considering whether a right was clearly established, the law must be particularized to the facts of the case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citation omitted). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia. v. Wesby*, 138 S. Ct. 577, 590, 199 L.Ed.2d 453 (2018) (emphasis added); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (explaining that right must be "sufficiently clear that every reasonable official would have understood that what he [or she] is doing violates that right" (emphasis added)). General statements of the law are insufficient. *White*, 137 S. Ct. at 552 (citation omitted).

### a.     Clearly Established Law

Plaintiffs identify four cases to show that the law was clearly established. First, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). This case established, at a general level, that plaintiffs may bring equal protection claims on behalf of a "class of one." In other words, a plaintiff may allege an equal protection claim by claiming to have been intentionally treated differently from other similarly situated individuals without a rational basis. *Id.* at 564. But in *Olech*, a village demanded a 33-foot easement to connect the plaintiff's property to the municipal water supply when it only required a 15-foot easement from other similarly situated property owners. *Id.* at 565. This factual situation does not provide specific guidance to the individual City Defendants in this case.

Second, *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002). Plaintiffs use this case to show that their takings claim was clearly established. But the case involved a moratorium on development while developing a land-use plan. *Id.* at 306.

It does not speak to the situation here—where the mayor declared that he would let others attach to plaintiff's private water line but did not prevent Plaintiff from continuing to use the line.

Third, *Clajon Product Corp. v. Petera*, 70 F.3d 1566 (10th Cir. 1995). Plaintiffs claim that this case shows "it is clearly established that a regulation goes too far so as to effect a regulatory taking if (1) it deprives an individual of all economically beneficial use of his or her property; or (2) it does not substantially advance legitimate state interests." (Doc. 50, at 17.) In this case, however, there is no regulation alleged, and Plaintiffs have also not alleged that they have been deprived of all economically beneficial use of their property.

And fourth, *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). Plaintiffs state that "the standards set forth in [this case] should have put these Defendants on notice that their actions were in violation of Plaintiffs' constitutional rights." (Doc. 50, at 17.) This statement falls far short of demonstrating to the court that the rights at issue are clearly established. Plaintiffs failed to identify any similar facts or situations that were sufficiently similar to put Defendants Lytle and Kerr on notice that their actions were unconstitutional.

Plaintiffs ask this court to apply a sliding scale to determine whether the law was clearly established, citing *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016). This sliding scale test has been called into question recently, *see McCoy v. Meyers*, 887 F.3d 1034, 1053 n.22 (10th Cir. 2018), but the Tenth Circuit has not yet decided whether it conflicts with Supreme Court authority. It may still be that if actions lean more toward "obviously egregious," less specificity is required to clearly establish a violation. *See A.M.*, 830 F.3d at 1135–36 (citations omitted). But here, Defendants' actions—while perhaps ill-advised—fall nowhere near an "obviously egregious" standard.

6

Plaintiffs have not met their burden of showing that Defendants Lytle and Kerr should have known that their actions violated the constitution based on clearly established law. Both Defendants are therefore entitled to qualified immunity for the claims against them in their individual capacities.

### b. Violation of Constitutional Right

Because the court has determined that no clearly established law put Defendants Lytle and Kerr on notice that their actions were unconstitutional, the court need not consider at this time whether Plaintiffs have adequately alleged that their actions violated the Constitution.

### 2. Monell Liability Applied to the City of Wellsville

In *Monell v. Department of Social Services of New York*, the United States Supreme Court held that a municipality can be liable under § 1983 for violations of civil rights if the violation is the result of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). This "official policy" requirement distinguishes the act of the municipality from acts of the employees of the municipality, as municipal liability cannot derive from a theory of respondeat superior. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). A government, therefore, cannot be sued under § 1983 for injuries caused by its employees; rather, liability only attaches "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict the injury." *Monell*, 436 U.S. at 694; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (holding that *Monell* liability attaches only "for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.'"). Only municipal officials who have "final policymaking authority" are subject to *Monell* liability, and the challenged action "must have been

7

taken pursuant to a policy adopted by the official or officials responsible under state law for making policy . . ." *Id.*

To establish liability under *Monell*, Plaintiffs must show "(1) the existence of a municipal custom or policy and (2) a direct casual link between the custom or policy and the violation alleged." *Hollingsworth v. Hill*, 110 F.3d 733, 742 (1997). Municipal liability can be based on (1) a formal regulation or policy statement, (2) an informal custom that amounts to a "widespread practice that, although not authorized or written by law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,'" (3) the decisions of employees with final policymaking authority, or (4) "the ratification by such final policymakers of the decision—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (citing *Praprotnik*, 485 U.S. at 123–27; *Monell*, 436 U.S. at 690–91; *Pembaur*, 475 U.S. at 480–81).

Additionally, the Supreme Court has held that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989) (rejecting the contention that only unconstitutional policies are actionable under § 1983). Municipal liability may be based on a failure to train or failure to supervise employees, but only if that failure results from "deliberate indifference" to the injuries that may be caused. *Brammer-Hoelter*, 602 F.3d at 1189.

In their complaint, Plaintiffs allege the following relating to their *Monell* claims:

> 65. The unconstitutional affirmative final policy decisions and policies, practices, customs and procedures of the City of Wellsville, the Mayor and Darien Kerr include but [sic] not limited to:
> a) The City Council deciding on January 9, 2019, that the name on Marc Smith's water meter could not be changed to the Woodson Water Board;

8

b) The Mayor announcing on January 30, 2019 after executive session that Plaintiffs could not remove Defendant Neighbors from Plaintiffs' Water Line and that Defendant Neighbors could connect city meters to it;

c) Intentionally or recklessly allowing Defendant Neighbors to cross-connect their water lines to Plaintiffs' in violation of city ordinances;

d) Allowing Defendant Neighbors to pay directly to the City what they claimed were their purported portions of Plaintiffs' monthly water bills;

e) Not requiring Defendant Neighbors to pay their purported shares of water bills to Plaintiffs so that all parties could reconcile and agree on each user's proportionate share of each water bill;

f) Refusing to disclose to Plaintiffs the amount paid by each Defendant Neighbor on each month's bill resulting in Plaintiffs paying more than their proportionate share to make up any shortfalls;

g) Ignoring the legal responsibilities of Plaintiffs to pay the monthly water bills because the meter was in Marc Smith['s] name;

h) A policy, practice, custom or procedure of failing to enforce the city ordinances prohibiting cross-connections and requiring each customer to have a meter;

i) Failing to provide equivalent water main lines to Plaintiffs' property;

j) Publicly declaring control of Plaintiffs' Water Line so that Defendant Neighbors could attach meters to it;

k) Publicly humiliating, disparaging and maligning Plaintiffs and encouraging Defendant Neighbors and other employees to do so;

l) Engaging in a conflict of interest by concealing the City's dealings with Scott Sparks and his employer, Mid State Rentals, LLC, when ruling on Water Line issues.

66. In addition to making unconstitutional final policy decisions, policies, practices, customs and procedures, Mayor Lytle, Darien Kerr and the City of Wellsville have also failed to provide adequate training to employees in the following areas:

a) To have a regular program for the detection and elimination of cross-connections as required by K.A.R. 28-15-18 (f) and to implement such a program;

b) To deal exclusively with Plaintiffs and similarly situated water customers whose names meters are issued to as the legally responsible party;

c) Accepting payments from non-metered Defendant Neighbors on Plaintiffs' bill then refusing to disclose to Plaintiffs how much was paid placing Plaintiffs in an untenable position;

d) Allowing employees to engage in conduct contrary to the City's stated position the Plaintiffs' Water Line was a private water line and that all matters relating thereto would have to be worked out between Plaintiffs and Defendant Neighbors;

e) Failing to train employees that the exact same amount paid by a Defendant Neighbor each month could not possibly be an accurate accounting of a propionate share of each month's water bill;

9

> f) Following the advice of the City Attorney and Certified Operator;
> g) Allowing representatives to conduct City business without disclosing conflicts of interest and without recusal.

(Doc. 42 at 14–16.)

Plaintiffs allege that the customs and policies of the city unconstitutionally injured them. They further allege that Defendants Lytle and Kerr had final policy-making authority for the city. Assuming, without deciding, that Plaintiffs have adequately alleged city customs and policies, the court must address the constitutional questions that it did not need to resolve above—that is, whether any alleged custom or policy resulted in a constitutional violation. The court therefore reviews below whether Plaintiffs have stated underlying constitutional violations.

### a. Equal Protection Claim

To state an equal protection claim, Plaintiffs must allege comparators—others similarly situated in all material respects to Plaintiffs. *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1253 (D. Kan. 2016). Plaintiffs allege that they have been treated differently from other city water customers. But they do not allege that they have been treated differently from others in similar situations: (1) others who live outside the city limits; (2) and receive water through a private service line; (3) that has, at some prior time, been tapped into by neighbors without the knowledge of the city. Plaintiffs' broad, generic allegations of unequal treatment are insufficient to plausibly state an equal protection claim.

### b. Constitutional Taking

A property owner has an actionable Fifth Amendment taking claim when the government takes his property without paying just compensation. *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). The takings clause of the Fifth Amendment applies to the states through the Fourteenth Amendment. *Mur v. Wisconsin*, 137 S. Ct. 1933 (2017). A taking may

10

occur through physically depriving the owner of the property or by placing such a restrictive regulation upon the owner they essentially are deprived of the ability to use the property. *Palazzolo v. Rhode Island*, 553 U.S. 606, 617 (2001) (internal citations omitted).

There are a few problems with Plaintiffs' takings claim. However, the most glaring issue is that Plaintiffs still have their private water line. They still receive water at their house. Indeed, even the fact that the neighbors are also using Plaintiffs' water line has not changed as a result of the actions of anyone acting on behalf of the city. One of Plaintiffs' complaints was that their neighbors were not properly measuring their water usage for payment to the city. But the city has offered to provide meters at cost to remedy that situation. To date, Defendant Lytle's declarations about Plaintiffs' water service line have apparently gone unenforced, and there are no allegations that a physical taking has occurred. Thus, Plaintiffs have failed to plead sufficient facts demonstrating a constitutional taking.

### c.     **Substantive Due Process**

Under the current standards for evaluating a substantive due process claim, as articulated by the Tenth Circuit and the Supreme Court, "[i]n order to prevail on their substantive due process claim, Plaintiffs must demonstrate that the state acted in a manner that shocks the conscience." *Uhlrig v. Harder*, 64 F.3d 567, 571 (10th Cir. 1995). "The Due Process Clause is not a guarantee against incorrect or ill-advised [government] decisions." *Id*. at 573. Negligent conduct is insufficient to expose the government to liability; a "§ 1983 violation must be predicated on a state action manifesting one of two traditional forms of wrongful intent . . . (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm." *Id*. The second form covers reckless actions and includes "when a state actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious

11

and unreasonable disregard of the consequences." *Id*. at 574. In addition to showing culpability, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id*.

Plaintiffs' allegations do not meet this high standard. For instance, Plaintiffs' assert their due process rights were violated because the city failed to reveal a business relationship between Defendant Sparks' employer, Mid State Rentals, and the city that violated the city's code of ethics. (Doc. 42 at 12.) However, they fail to articulate facts illustrating how the business relationship between Sparks' employer and the city benefits Sparks or amounts to a constitutional violation. A violation of an internal policy—code of ethics—does not equate to a constitutional taking or another constitutional claim. These allegations of state action in the complaint do not rise to the level of a constitutional due process violation.

Additionally, Plaintiffs have alleged a state law claim for inverse condemnation. The existence of a state law remedy precludes a substantive due process claim when the only loss alleged is deprivation of a property interest and there is no independent constitutional violation. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). For these reasons, the court determines that Plaintiffs have failed to state a constitutional violation of substantive due process.

### d. Failure to Train

A policy of inadequately training employees may result in constitutional liability only where the "city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Canton v. Harris*, 489 U.S. 378, 392 (1989).

> This rule is most consistent with our admonition in *Monell,* 436 U.S., at 694, 98 S.Ct., at 2037, and *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its

> inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice BRENNAN's opinion in *Pembaur v. Cincinnati,* 475 U.S. 469, 483–484, 106 S.Ct. 1292, 1300–1301, 89 L.Ed.2d 452 (1986) (plurality) put it: "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. See also *Oklahoma City v. Tuttle,* 471 U.S., at 823, 105 S.Ct., at 2436 (opinion of REHNQUIST, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.

*Canton*, 489 U.S. at 389.

Plaintiffs' allegations do not meet this standard. They allege that the city attorney and the mayor took different positions on Plaintiffs' water line dispute. This allegation does not plausibly state a claim for failure to train. And whether the city enforces its code prohibiting cross-connections is irrelevant here. The ordinance prohibits connection of a private water supply (such as a well) with the city's water supply system. (Doc. 13-6 at 2) ("No person shall establish or permit to be established or maintain or permit to be maintained, any cross-connection whereby a private, auxiliary, or emergency water supply other than the regular water supply of the city may enter the supply and distributing system of the city unless specifically approved by the Kansas Department of Health and Environment and the governing body."). Although Plaintiffs have a private water line, it is not a private source of water. Finally, Plaintiffs have not adequately alleged that either Defendant Lytle or Kerr actually supervised the employees who took the alleged actions of accepting payments, etc. "[T]he defendants' role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). For all of these reasons, Plaintiffs have failed to state a claim for failure to train.

### B. State Law Claims

Because the court dismisses Plaintiffs' federal claims, the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Plaintiffs and Defendants are not diverse, and any claims remaining in Plaintiffs' complaint arise under state law. Although the court could exercise supplemental jurisdiction over Plaintiffs' state law claims, the court declines to do so. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.") (quoting *Smith v. City of Enid ex rel Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)). There are no compelling circumstances that justify this court retaining jurisdiction. In addition, this case is in the early stages as a scheduling order has not been entered and no formal discovery has been exchanged. Accordingly, the court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## IV. Conclusion

The actions of the City Defendants in this case—even taking Plaintiffs' well-pleaded allegations as true—do not rise to the level of a constitutional violation. And most certainly, the law on any such alleged violation was not clearly established. Plaintiffs have thus failed to state a plausible claim for relief on their federal claims. As for Plaintiffs' claims under state law, the court declines to exercise supplemental jurisdiction over these claims and accordingly dismisses them without prejudice.

**IT IS THEREFORE ORDERED** that the Defendants' Motion to Dismiss (Doc. 43) is GRANTED.  The court dismisses the federal claims for failure to state a claim.  The court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses them without prejudice.

IT IS SO ORDERED this 19th day of November, 2020.

            ____s/ John W. Broomes_____
            JOHN W. BROOMES
            UNITED STATES DISTRICT JUDGE